UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

TRAVIS NAPIER KING,

Plaintiff,

v.                          608CV109

STEVE UPTON; JOHN PAUL; JOE
BURNETTE; JOHNNY SMITH; and
LARRY BREWTON,

Defendants.

## ORDER
### I. INTRODUCTION

The Court has read and considered the Magistrate Judge's (MJ's) Report and Recommendation (R&R) in this case, to which there have been no objections. Doc. # 33. The Court disagrees with the MJ's determination that King has stated actionable claims for deliberate indifference and supervisory liability against the relevant defendants and his recommendation that King's claims should therefore be allowed to proceed. *Id.* at 7-8 (Sections III and IV). The Court instead holds as follows.

### II. APPLICABLE LAW

In considering a F.R.Civ.P 12(b)(6) motion, all facts in the plaintiffs' complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted). If it does not, the complaint should be dismissed. *Id.* Thus, while F.R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," allegations in the complaint must "possess enough heft to show entitlement to relief." *Twombly*, 127 S. Ct. at 1966 (quotes, cite and alterations omitted). Furthermore, there remains the longstanding rule that "conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 408 n.10 (11th Cir. 1996).

### III. ANALYSIS
#### A. Deliberate Indifference Claims

King's complaint sets forth four particular conditions that he endured that he claims violated his constitutional rights: (1) having to sleep on the bare floor of his cell for one night; (2) having to sleep and eat on a bed-frameless mattress on the floor for four other nights; (3) having toilet water flow into his cell and seep through his mattress while he was sleeping on it on the floor, resulting in the water coming into contact with his skin; and (4) having to sleep one night on a clean mattress on a dry floor that had not been chemically cleaned after toilet water had flowed onto it. *See* doc. # 1 at 6-8. None of these claims warrant relief, albeit for varying reasons.

An inmate demonstrates that the conditions of his confinement violate his constitutional rights by showing: (1) that the alleged deprivation is "objectively, sufficiently serious," resulting "in the denial of the minimal civilized measure of life's necessities," and (2) that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hawkins v. Byrd*, 2009 WL 1313269, at *3 (E.D. Ark. 5/12/09). Despite its detailed and organized nature, King's complaint does not contain a plausible claim that the Defendants were deliberately

indifferent to a significant risk of harm to his health or safety. *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-51 (2009) (to survive a motion to dismiss, complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face; claim has "facial plausibility" when plaintiff pleads factual content that allows court to draw reasonable inference that defendant is liable for the misconduct alleged).

First and foremost, King has not alleged that any excessive risk to his health or safety was presented by incident wherein toilet water seeped through his mattress and came into contact with his skin. Nor has he alleged that the dirty condition of the floor on one of the nights that his mattress was on the floor presented such a risk. To be sure, the episodes with the toilet water likely caused annoyance and some discomfort, but King has not alleged that he was subjected to anything more than innocuous toilet water, and, for that reason, he does not state a § 1983 claim with regards to this particular incident. *Rhodes v. Chapman*, 452 U.S. 337. 346 (1981) ("[T]he Constitution does not mandate comfortable prisons."). *Compare Fischer v. Ellegood*, 238 Fed. Appx. 428, 434 (11th Cir. 2007) ("Furthermore, Fischer has given us no reason to believe that sleeping on the floor or on unwashed bed linens or being denied showers amounts to either a deprivation of 'essential ... sanitation' ... or an Eighth Amendment violation in their own right -- at least not when the duration is only five days."), *with McCord v. Maggio*, 927 F.2d 844, 846-47 (5th Cir. 1991) (plaintiff's allegations established an Eighth Amendment claim where he had been forced repeatedly over a 10-month period to sleep on a mattress placed on a floor that was often flooded with sewage and foul water).

Additionally, King has not alleged -- as he must -- that any defendant had direct involvement in this particular alleged deprivation (sleeping on surfaces that were or had been saturated with toilet water). He alleges that Defendants Burnette and Smith made the initial determination that he would sleep on a mattress without a bed-frame, but he does not allege that either of them -- nor any other named defendant -- made the decision to keep his mattress on the floor (without a bed-frame), much less that they were deliberately indifferent to a known risk that the toilet overflow issues would arise *and* that they would somehow pose a risk to his health and safety. Nor has King alleged that any Defendant affirmatively decided he still should not be given a bed-frame after they became aware that the overflow issues *actually* had arisen. Quite to the contrary, in his Complaint, King paints a picture of a rather helpful jail staff that endeavored to accommodate him as much as possible after the misconduct of other inmates caused the water to seep into his cell. For example, after the first "overflow" was discovered, the toilet water was cleaned out of his cell, he was allowed to shower, he was given cleaning supplies to further sanitize his cell, and he was given a new clean mattress. Doc. # 1 at 7. After the second "overflow," he was given tools to scoop the water off the floor and into his toilet. *Id.* at 8 He was not given cleaning supplies because none were available at that time. *Id.* He was not given a new mattress because his had not come into contact with the toilet water, since he had placed it on a shelf so that it would not get wet. *Id.* at 7-8. The very next day he was given a bed-frame. *Id.* at 8. In fact, King does not even name as defendants the individuals who failed to provide cleaning chemicals to him after the second overflow. In sum, King has not alleged that any officials were deliberately indifferent to

2

some (unspecified) excessive risk posed by his exposure to toilet water.

It is thus clear that King's § 1983 Eighth Amendment claim based on prison conditions cannot rest upon the fact that his sleeping arrangements led to his coming into contact with toilet water and surfaces that had previously been saturated by toilet water. He is thus left with a claim based solely on the sleeping situation itself. That is, King must have stated a facially plausible claim that his having to sleep one night on a bare floor and four nights on a mattress without a bed-frame was a sufficiently grave deprivation of a necessity, that it posed an excessive risk to his health and safety, and that at least one of the defendants was deliberately indifferent to that risk. This, however, he has not done.

First, King has not alleged -- as he must -- facts to support a claim that that the sleeping arrangements constituted a denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, nor that they presented any excessive risk to his health or safety. *See Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (no constitutional violation where inmate had to temporarily sleep on a mattress on a floor or on a table); *Tinker v. Fries*, 2009 WL 89669, at *3 (N.D. Ind. 1/12/09) (unpublished) ("Without more, simply being required to sleep on the floor with a mat for a few months is not cruel and unusual punishment. Tinker provides no indication of what safety or health risks he was exposed to as a result of his sleeping arrangement, other than a suggestion that his cell mates could have stepped on him when they exited their beds. Even giving Tinker the benefits of the inferences he is entitled to at this stage, his allegations regarding his sleeping conditions do not state a claim under the Fourteenth Amendment.").

Additionally, King has not alleged -- as he must -- that any of the Defendants were deliberately indifferent to some risk to his health or safety. King states that, the day before he received a bed-frame, he was treated for back pain. Doc. # 32 at 1. He admits that he had a prior history of back trouble, but he attributes this recurrence of back pain to the five days he slept without a bed-frame. *Id.* Those allegations, however, do not cure his failure to allege *deliberate indifference* to that (or some other) risk. That is, he has not alleged that any Defendant knew or had reason to know that he had a history of back trouble, which could be irritated by the sleeping arrangement, and that they deliberately disregarded that risk. Nor has he alleged that he was at a serious risk for some different injury and that risk was deliberately disregarded by the Defendants.

### B. Supervisory Liability Claims

Additionally, King's claims against defendants Upton and Paul must be dismissed because he has not made the necessary allegations against them. It is well established that supervisory liability under § 1983 cannot be based upon theories of vicarious liability or respondeat superior. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). King must allege that Upton and Paul either directly participated in the alleged constitutional deprivations or that there is some other causal connection between their acts or omissions and the alleged constitutional deprivations. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Causal connections form when a supervisory official implements, fosters, or tolerates an official or unofficial policy or custom under which the violation occurred. *Zatler v. Wainwright*, 802 F.2d 397, 401

(11th Cir. 1986). King, however, has failed to allege that Upton and Paul directly participated in the constitutional deprivations or implemented a policy or tolerated some custom giving rise to same.

In his R&R allowing King's claims against Upton and Paul to proceed, the MJ relied heavily on King's responsive brief. *See* doc. # 33 at 7-8. King's statements in his brief, however, do not cure his Complaint's shortcomings with respect to Defendants Upton and Paul.

To be sure, King avers in his brief "that Paul and Upton 'agreed and approved' of the treatment Plaintiff received." *Id.* (R&R quoting doc. # 23 at 3). Notably, however, King's actual Complaint and Amended Complaint do not contain any such accusations of knowledge and approval. *See* doc. ## 1 & 32. And his brief does not otherwise elaborate on how and when the two men "agreed and approved" of King's sleeping conditions and his exposure to the toilet water. *See* doc. # 23. Such a bare-bones and conclusory accusation does not "raise [King's] right to relief above the speculative level" in satisfaction of *Twombly*. 127 U.S. at 1965. Likewise, the Court cannot rely upon King's conclusory statement in his brief that "it is evident" that Paul and Upton had prior knowledge of his living conditions and failed to take corrective actions. Doc. # 23 at 3. King asserts in his brief that Paul and Upton's denials of his grievances provide evidence of their approval of the other defendants' actions. *Id.* It would be illogical, however, to say that the denial of the grievances, which were filed and reviewed after the incidents at issue had concluded and after King had been provided a bed-frame, constitute evidence of the necessary "causal connection" between Paul and Upton's conduct and the alleged violations.

The Court has independently reviewed the Plaintiff's Complaint and Amended Complaint and determined that they lack the necessary allegations to state an actionable claim against Paul and Upton. The only factual allegations about Upton and Paul in the Complaint concern the fact that they denied Plaintiff's grievances. As a result, Plaintiff has not alleged sufficient facts to show he is entitled to relief against Upton and Paul.[1]

IV. **CONCLUSION**

Accordingly the Court ***REJECTS*** the Magistrate Judge's Report and Recommendation. Doc. # 33. The Court ***GRANTS*** Defendants' motion to dismiss. Doc. ## 17 & 22. King's Complaint, doc. ## 1 & 32, is therefore ***DISMISSED WITHOUT PREJUDICE*** in its entirety.

This day of 17 December 2009.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[1] Because the Court's ruling disposes of King's Complaint in its entirety, the Court declines to address the other grounds for dismissal urged by Defendants.